# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 13, 2004 Session

## MARIA MACLIN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-22833     Bernie Weinman, Judge**

---

**No. W2003-02667-CCA-R3-PC  - Filed November 24, 2004**

---

The petitioner, Maria Maclin, was convicted by a Shelby County jury of second degree murder.  The trial court sentenced the petitioner to twenty-two years in the Tennessee Department of Correction, and a ten thousand dollar fine was imposed.  Following an unsuccessful appeal of her conviction, the petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel at trial.  The petitioner now brings this appeal challenging the post-conviction court's denial of her petition.  After reviewing the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

C. Michael Robbins and James Thomas, Memphis, Tennessee (at trial), and William D. Massey and Lorna McClusky, Memphis, Tennessee (on appeal), for the appellant, Maria Maclin.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Emily Campbell, Assistant District Attorney General, for the appellee, State of Tennessee

## OPINION

### I.  Factual Background

The facts of this case were set out in this court's opinion on direct appeal:

> The [petitioner] and her family had been feuding with the victim, Glenn Taylor, and his family for many years.  On the evening of January 26, 1996, the [petitioner], the victim, and members of each of their families attended a basketball game at East High School in

Memphis. The families sat on opposite sides of the arena and gestured to each other throughout the game. At its conclusion, the [petitioner] stood in the crowded school parking lot with her sister, Latrice Woods, who accused Kena "Shea" Blakney, the older sister of the victim, of having stolen $100.00 from her. In response, Ms. Blakney accused Ms. Woods of slashing her tires. A fist fight followed. When the victim saw his sister fighting, he intervened, striking either Ms. Woods or the [petitioner] in the process. The [petitioner] then drew her gun and, as the victim attempted to flee, she shot him twice, killing him.

State v. Maria Maclin, No. 02C01-9710-CR-00383, 1998 WL 517839 (Tenn. Crim. App. at Jackson, Aug. 21, 1998), perm. to appeal denied (Tenn. Mar. 8, 1999).

The petitioner was convicted by a Shelby County jury of second degree murder. The trial court sentenced the petitioner to twenty-two years incarceration, and a ten thousand dollar fine was imposed. The petitioner subsequently filed a direct appeal, challenging the trial court's charge to the jury and the sentence imposed by the trial court. This court affirmed the petitioner's conviction and sentence. Id. Thereafter, the petitioner timely filed a pro se petition for post-conviction relief, alleging numerous grounds of ineffective assistance of counsel at trial. The post-conviction court appointed counsel to represent the petitioner,[1] and amended petitions were filed, alleging additional grounds of ineffective assistance of counsel and challenging the trial court's charge to the jury.[2]

On April 25, 2003, the post-conviction court held an evidentiary hearing at which the petitioner, her mother, her sister, and trial counsel testified. The petitioner's mother, LueTissue Elliott, testified that she hired trial counsel to represent the petitioner. Elliott related that she attended the petitioner's meetings with trial counsel and that they met on only three occasions. Elliott claimed that the petitioner informed trial counsel that she shot the victim in self-defense, but trial counsel told her that there was no such defense.

The petitioner's sister, Latrice Woods, testified that she was also present at the meetings with trial counsel. Woods claimed that the petitioner attempted to inform trial counsel of the facts of the case and to discuss possible defenses. However, when the petitioner asked if she could plead self-defense for coming to the aid of Woods, trial counsel replied that there was "no such thing as self-defense in the State of Tennessee."

The petitioner testified that trial counsel was retained after her case was bound over to the Shelby County Criminal Court. She claimed that prior to trial she had only three meetings with trial

---

[1] The post-conviction court initially appointed Michael Scholl to represent the petitioner in seeking post-conviction relief. However, Scholl was subsequently allowed to withdraw as counsel, and the post-conviction court appointed William D. Massey, who had assisted the petitioner in preparing her pro se petition for post-conviction relief.

[2] On appeal, the petitioner alleges only the ineffective assistance of counsel at trial.

counsel and that each meeting lasted only twenty to twenty-five minutes. The petitioner testified that she informed trial counsel at the outset of his representation that she shot the victim. She told trial counsel that on January 26, 1996, following a high school basketball game, her sister, Latrice Woods, and the victim's sister, Kena Lashea Blakney, began fighting in the school's parking lot. The victim intervened in the fight, striking Woods twice. The petitioner observed that the victim had a gun, so she "pulled [her] gun too," shooting the victim. The petitioner claimed that she shot the victim because she feared for her life and the life of her sister.

The petitioner testified that when she told trial counsel that she shot the victim in self-defense, trial counsel informed her that Tennessee did not have "self-defense law." Trial counsel further informed her that the theory of defense at trial would be based upon the State's lack of evidence, including the lack of fingerprints, ballistic evidence, and gunpowder residue. The petitioner testified that she relied upon the advice of trial counsel, believing his theory of defense was in her best interest. According to the petitioner, trial counsel never mentioned the theories of self-defense or voluntary manslaughter.

The petitioner testified that at their final meeting prior to trial, she informed trial counsel that she wanted to testify, but trial counsel told her that "it would hurt [her] if [she] testified." Again, the petitioner relied on the advice of trial counsel. The petitioner related that if she had testified at trial, she would have informed the jury that at the time of the shooting she feared for her life and the life of her sister. The petitioner claimed that trial counsel did not visit her after she was confined in jail between trial and sentencing. She further claimed that she did not know that she had a right to testify at sentencing.

The petitioner testified that no testimony was presented at trial that the victim was armed when he struck Woods in the head. The petitioner claimed that although she informed trial counsel that she knew of several witnesses who would have testified to this fact, trial counsel "[acted like] [w]hatever we have that's what we're going to use." According to the petitioner, trial counsel did not speak with her during trial, and when he spoke with her during recesses the conversations were "unimportant."

The petitioner testified that trial counsel informed her of the State's plea offers of fifteen and twelve years, but she told trial counsel that she wanted to proceed to trial because she had acted in self-defense. The petitioner explained that she believed that trial counsel would present a theory of self-defense; however, trial counsel failed to do so. When the petitioner told trial counsel that she was upset that he had not presented the theory of self-defense, trial counsel acted "nonchalant." The petitioner claimed that she had no knowledge of criminal procedure, stating that she had been arrested on only one prior occasion for forgery and had pled guilty to that charge.

Trial counsel testified at the evidentiary hearing that his practice was limited to criminal law and that he had previously represented defendants in murder trials. Trial counsel was unable to recall the number of times he met with the petitioner; however, he denied meeting with her on only three occasions, estimating that they met twenty times. Trial counsel recalled that the petitioner's mother

and sister were present at several of the meetings. Trial counsel estimated that he spent ten hours on the petitioner's case, claiming, "I didn't stay awake nights worrying about it, but I did as much as I could do on this case." Trial counsel also met and interviewed six witnesses whom he subsequently called to testify on behalf of the petitioner. According to trial counsel, all six witnesses testified that they did not observe the petitioner with a gun on the night of the shooting.

Trial counsel denied telling the petitioner that "there was no such thing as self-defense in Tennessee," but explained that defending one's sister did not constitute self-defense. Trial counsel related that he did not believe that self-defense was a viable defense because the jury would not likely believe that the petitioner was placed in fear by the fifteen-year-old victim whom she shot in the back. He further related that defense of another was not an option because the petitioner denied shooting the victim. Trial counsel explained that he had never presented a theory based upon the defense of others and chose not to in the petitioner's case.

Trial counsel testified that the petitioner wanted to go to trial and rejected the State's initial plea offer of a fifteen-year sentence and a subsequent offer of twelve years. According to trial counsel, the petitioner agreed to pursue a theory based upon the State's inability to prove its case. The victim claimed, "even if I did shoot [the victim], the State can't pro[ve] it. They didn't find the weapon. . . . [T]hey didn't take any fingerprints, didn't do a lot of different stuff . . . ." Trial counsel stated, "[S]ome of that stuff was true, . . . the police were lax in their investigation . . . , and that's the theory that we presented at trial." At trial, trial counsel emphasized the State's lack of fingerprint and ballistic evidence and its failure to test the petitioner's hands for gunshot residue. He also attempted to discredit the content of the testimony of the State's witnesses to "put some doubt in the jury's mind."

Trial counsel denied telling the petitioner that she did not have the right to testify at trial. He claimed that he told the petitioner that she had an absolute right to testify, but she did not want to testify. Trial counsel acknowledged that if the petitioner had testified, he would have argued that she shot the victim in defense of her sister or in the heat of passion.

On cross-examination, trial counsel acknowledged that the petitioner subsequently informed him that she had shot the victim after she observed the victim assaulting Woods with a gun. The petitioner informed trial counsel that at the time of the shooting she feared for her life and the life of her sister. Trial counsel conceded that the State presented the testimony of witnesses who claimed that the petitioner shot the victim; however, trial counsel disagreed that the State presented overwhelming evidence that "put [the petitioner] in possession of a weapon." Trial counsel noted that the State also presented the testimony of witnesses who claimed that they did not observe the petitioner with a weapon. Trial counsel testified that he considered presenting evidence of voluntary manslaughter, but the petitioner denied shooting the victim and wanted to proceed on the theory that the State had failed to prove its case. Trial counsel noted that the trial court instructed the jury on voluntary manslaughter as a lesser-included offense of second degree murder.

Trial counsel conceded that because the petitioner's trial was in 1997, he was unable to recall meeting with the petitioner between conviction and sentencing; however, he explained that it would have been normal procedure to meet with her twice to inform her of what to expect at sentencing.[3] Trial counsel was also unable to recall advising the petitioner of her right to testify at sentencing. However, he noted that the petitioner made a statement to the trial court at the sentencing hearing. According to trial counsel, the trial court asked the petitioner if she had anything to say before he pronounced sentence, and the petitioner told the trial court that the State had failed to prove that she shot the victim. Trial counsel claimed that he had been unaware that the petitioner had wanted to make a statement to the trial court.

In rebuttal, the petitioner testified that in the days following the shooting she provided the police with two statements in which she claimed that she had shot the victim in self-defense and defense of her sister. The petitioner claimed that trial counsel was the one who advised her that the State would be unable to prove she shot the victim.

At the conclusion of the testimony, the post-conviction court took the matter under advisement. Subsequently, the post-conviction court held two additional hearings on the matter. At a hearing on June 5, 2003, Janet Shipman, the assistant district attorney general who prosecuted the instant case, testified that she and trial counsel discussed the case on many occasions. She related that trial counsel visited her office several times to discuss plea offers, review the case file, and learn of the State's witnesses. Shipman recalled that the petitioner had given two statements to the police, which statements were made available to trial counsel. Shipman testified that the State did not enter the statements into evidence at trial because they were "self-serving" and "contradictory."

Shipman testified that prior to sentencing, trial counsel filed a notice of mitigating factors on behalf of the petitioner. In the notice, trial counsel noted the applicability of several factors which were based upon the petitioner's shooting the victim in order to defend her sister. Shipman related that although trial counsel had been under no duty to disclose his theory of defense, she believed that he had indicated that he would pursue a theory of defense of others. According to Shipman, trial counsel had attempted to have the State admit that the victim was holding a gun at the time of the shooting. Shipman recalled that at trial, trial counsel presented the theory of defense of another and attempted to discredit the State's evidence by noting inconsistencies in the testimony of the State's witnesses. Trial counsel also argued in the motion for new trial that the petitioner shot the victim in order to defend her sister. Shipman recalled that although the petitioner did not testify at trial, she did make a statement to the trial court at sentencing.

Jane Sturdivant testified at the same hearing that she assisted trial counsel in defending the petitioner at trial. She related that on the morning of trial, trial counsel asked for her assistance at trial. When Sturdivant inquired as to the theory of defense, trial counsel responded that he had several theories of defense, including presenting the theory of defense of others and challenging the

---

[3]Trial counsel testified that he had been unable to locate his file on the petitioner's case.

State's lack of evidence. In order to determine how to proceed on defense, trial counsel waived opening statement and allowed the State to present its case-in-chief. Sturdivant was unable to recall which theory of defense trial counsel pursued, but claimed that there was nothing unusual in trial counsel's representation of the petitioner.

LueTissue Elliott was recalled to testify on behalf of the petitioner. She testified that at the close of the State's case-in-chief, she attended a meeting between trial counsel and the petitioner. According to Elliott, trial counsel commented, "[W]ow, they didn't use those statement[s]. We got it made." On cross-examination, Elliott acknowledged that trial counsel was surprised that the State did not introduce the petitioner's statements. However, she claimed that trial counsel failed to explain why the State's failure to use the statements was "a good thing." Elliott further acknowledged that no defense witness testified that they had observed the petitioner shoot the victim.

The final hearing on this matter was held on July 10, 2003. At that hearing, trial counsel testified that since his previous testimony in this matter he had reviewed the petitioner's case file. He recalled that at trial there were two possible theories of defense. The first approach was to argue that the State had not proven that the petitioner shot the victim. This theory was based upon the State's lack of fingerprint and ballistic evidence. The second approach was to present the theory of defense of others by arguing that the petitioner shot the victim to protect Woods. Trial counsel explained that before choosing the theory with which to proceed, he waived opening statement and waited to see the evidence presented by the State. When the State chose not to introduce the petitioner's statements in which she told police that she had shot the victim, trial counsel believed that the State had failed to prove its case, and he made the tactical decision to proceed with that theory of defense. Trial counsel testified that he presented the testimony of six witnesses who testified that they had not observed the petitioner with a gun nor had they observed the petitioner shoot the victim.[4] On cross-examination, trial counsel conceded that the petitioner's statements to the police raised the issue that the petitioner acted in defense of another.

At the conclusion of the testimony, the post-conviction court again took the matter under advisement. On October 8, 2003, the post-conviction court entered an order denying the petition, finding,

> [T]he trial attorney adequately investigated this case. He interviewed all the defense witnesses prior to trial, met on numerous occasions with his client and met with the prosecution on several occasions in an attempt to persuade them that the victim had a gun and to get the most favorable guilty plea.
>
> The Court further finds that the defense attorney developed a trial strategy that he felt would be the most effective for his client. He was of the opinion that under the facts of this case self-defense or the

---

[4]Our review of the trial transcript reveals that the defense presented the testimony of only five witnesses.

defense o[f] another was not a viable defense. He felt from his investigation that the State could not carry its burden of proof and it appears that the attorney's advice to his client not to testify was sound advice considering the entire strategy and the defendant's previous statement[s] to the police. The Court further finds that the attorney consulted with his client concerning the trial strategy and she was in full agreement.

. . . .

The Court does not find ineffective assistance of counsel because in hindsight another trial strategy may have been more effective than the one utilized.

The petitioner now brings this appeal challenging the denial of her petition for post-conviction relief.

## II. Analysis

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). On appeal, this court will neither second guess the tactical and strategic decisions of defense counsel, nor measure the representation by "20-20 hindsight." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

On appeal, the petitioner first contends that trial counsel rendered ineffective assistance of counsel by failing to proceed on the theories of self-defense and defense of another and by failing to present evidence of the lesser-included offense of voluntary manslaughter. Specifically, the petitioner argues that in light of the "overwhelming" evidence presented by the State at trial that the petitioner shot the victim, "it [was] patently unreasonable as a matter of law for trial defense counsel to have maintained [the] theory of defense . . . that the prosecution could not satisfy its burden of proof." According to the petitioner, the only viable theories of defense were self-defense and defense of another.

As previously noted, this court will neither second guess the tactical and strategic decisions of defense counsel, nor measure the representation by "20-20 hindsight." Cooper, 849 S.W.2d at 746. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made for *sound* trial strategy. However, this deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

In its order denying post-conviction relief, the post-conviction court found that trial counsel "adequately investigated this case . . . [and] developed a trial strategy that he felt would be the most effective for his client. . . . The Court does not find ineffective assistance of counsel because in hindsight another trial strategy may have been more effective than the one utilized." We agree.

At the evidentiary hearing on July 10, 2003, trial counsel testified that prior to trial he developed two possible theories of defense: (1) that the State had failed to prove its case beyond a reasonable doubt and (2) that the petitioner had acted in defense of her sister when she shot the victim. Trial counsel explained that the theory presented at trial depended upon the evidence presented by the State. Accordingly, trial counsel waived opening statement in order for the State to present its case-in-chief. When the State failed to introduce into evidence the petitioner's statements to police in which she confessed to shooting the victim, trial counsel made the tactical decision to proceed on the theory that the State had not met its burden of proof. According to trial counsel, the petitioner agreed to proceed to trial on that theory of defense. As the State notes, the petitioner's statement to the trial court at sentencing supports trial counsel's testimony. At sentencing, the petitioner told the trial court, "I didn't mean to do whatever they say that I done, but they hadn't proved that I had done this, Your Honor, . . . because they didn't take no fingerprints or nothing that I had done -- to prove that I had done it."

Furthermore, contrary to the petitioner's argument on appeal, the State's evidence at trial, although sufficient, was not "overwhelming." The State lacked fingerprint and ballistic evidence, failed to test the petitioner's hands for gunshot residue, and chose not to introduce the petitioner's statements to police in which she admitted to shooting the victim. Moreover, trial counsel presented the testimony of five defense witnesses present at the time of the shooting who testified that they had not observed the petitioner with a gun nor had they observed the petitioner shoot the victim. Under these circumstances, we are unable to conclude that trial counsel's strategy was unreasonable. Regarding the petitioner's argument that trial counsel failed to present evidence of voluntary manslaughter, we note that the jury was instructed on this lesser-included offense, but chose to convict the petitioner of second degree murder. This issue is without merit.

Next, the petitioner asserts that trial counsel failed to represent the petitioner at trial in a manner consistent with the theory of defense. Specifically, the petitioner claims that trial counsel (1) "permitted a witness to testify to a hearsay recitation from a third party to the effect that two women shot the deceased, which statement described the women to include the petitioner"; (2) failed to object when a photograph of the petitioner's sister was admitted into evidence and described as "a photograph of the sister of the shooter"; (3) questioned State witness Carey Blakney about "whether he thought about trying to take *the gun away from* [*the petitioner*]," which question the petitioner argues was contrary to trial counsel's theory of defense at trial; and (4) failed to object to the State's "extensive outline of [its] case" during voir dire. According to the petitioner, "[a]ll of the above instances of conduct of trial defense counsel militate strongly against the post conviction court's finding that trial defense counsel developed a trial strategy based upon adequate investigation."

At the post-conviction hearing, trial counsel acknowledged that he did not object to Major Schwill's alleged hearsay testimony or the admission of the photograph of the petitioner's sister. However, he explained that he did not want to object "to everything Major Schwill was saying" and Blakney and the victim's family intended to identify the petitioner as the person who shot the victim. Trial counsel also disagreed that by asking Blakney about taking the gun from the petitioner, he

-9-

established that the petitioner had a gun. Trial counsel asked the question "in response to [Blakney's] testimony that he'd seen her shoot and take off at a high rate of speed." Regarding the State's comments during voir dire, trial counsel believed the comments were proper to ensure that potential jurors were not acquainted with the witnesses. Although the post-conviction court did not address these issues individually, the court found that counsel did not render ineffective assistance of counsel at trial. The evidence does not preponderate against that finding.

Next, the petitioner asserts that ten hours was a "woefully insufficient" amount of time to prepare for a four-day second degree murder trial. Although trial counsel testified at the first evidentiary hearing that he spent ten hours preparing for trial, he estimated that he met with the petitioner twenty times. He testified that he discussed the various theories of defense with the petitioner and interviewed six potential witnesses. Janet Shipman, the assistant district attorney general who prosecuted the petitioner, testified that she and trial counsel met on numerous occasions to discuss the case and for trial counsel to review the State's case file. Based upon the foregoing, we are unable to conclude that trial counsel was unprepared for trial.

Finally, the petitioner contends that she was deprived of her right to testify at trial and sentencing. The petitioner concedes that she agreed not to testify at trial, but argues that she relied upon the uninformed and ill-founded advice of trial counsel. The petitioner alleges that had she testified, she would have explained that she shot the victim in self-defense and in the defense of her sister.

It is well-established that the state and federal constitutions grant a criminal defendant the fundamental right to testify at trial. Momon v. State, 18 S.W.3d 152, 161 (Tenn. 1999). The decision to exercise or waive this right rests solely with the accused, not his attorney. Id. "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 161-62 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938)). A waiver of this right may not be presumed by a silent record. Id. at 162.

In Momon, 18 S.W.3d at 162, our supreme court outlined procedural safeguards to ensure that a defendant's knowing, voluntary, and intelligent waiver of the right to testify would be reflected on the record. However, because Momon served to clarify and reiterate the existing right to testify, the procedures adopted therein are not to be retroactively applied. Id. at 162-63. Moreover, the procedural safeguards are prophylactic in nature and not constitutionally required. Id. at 163. As such, "the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id.

The petitioner's trial was held in February 1997, two years prior to the supreme court's decision in Momon. Therefore, there was no requirement that the petitioner's trial counsel comply with the procedures set forth in that case. Nevertheless, the petitioner had the right to testify at trial. This court has previously observed that "[p]rior to the supreme court's holding in Momon, a

petitioner's claim that his counsel prevented him from testifying in his own behalf was treated like any other ground asserted for a claim of ineffective assistance of counsel." Allen Dale Cutshaw v. State, No. E2002-00438-CCA-R3-PC, 2003 WL 147025, at *7 (Tenn. Crim. App. at Knoxville, Jan. 22, 2003), perm. to appeal denied (Tenn. 2003); see also Terrance L. Turner v. State, No. M2002-02429-CCA-R3-PC, 2004 WL 587636, at *6 (Tenn. Crim. App. at Nashville, Mar. 25, 2004).

Although the petitioner concedes that she agreed not to testify at trial, she argues that she relied upon the uninformed and ill-founded advice of trial counsel. We are unable to conclude that trial counsel's advice was uninformed or ill-founded. As the post-conviction court found, "[Trial counsel] felt from his investigation that the State could not carry its burden of proof and it appears to the Court that the attorney's advice to his client not to testify was sound advice considering the entire strategy and the [petitioner's] previous statement[s] to the police." The evidence does not preponderate against this finding.

The petitioner also contends that she was deprived of the right to testify at sentencing. We note that the trial court allowed the petitioner to make a statement at sentencing, in which statement she argued that the State had failed to prove that she shot the victim. Nevertheless, the petitioner argues that trial counsel failed to meet with her prior to sentencing or advise her that she had the right to testify at sentencing. Although trial counsel was unable to recall meeting with the petitioner, he testified that his normal practice was to meet with a defendant at least twice prior to sentencing. Regardless, the petitioner offered no proof of what her testimony would have been had she testified at sentencing. Accordingly, we conclude that the petitioner has failed to demonstrate prejudice. This issue is without merit.

### III. Conclusion

Based upon our review, we conclude that the petitioner has failed to demonstrate that she was denied effective assistance of counsel at trial. Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-11-